HILLSTEAD and another, Plaintiffs and Respondents, v. SHAW and others, Defendants: SMITH and another, Defendants and Appellants.

*April 10—May 9, 1967.*

644

646

For the appellants there was a brief by *Gwin, Fetzner & Richards,* attorneys, and *John W. Fetzner* and *C. A. Richards* of counsel, all of Hudson, and oral argument by *C. A. Richards.*

For the respondents there was a brief by *Gavic & Richardson* and *Robert R. Gavic,* all of Spring Valley, and oral argument by *Robert R. Gavic.*

WILKIE, J.   A single issue is presented by this appeal: Did the trial court abuse its discretion by ordering a new trial in the interest of justice?

The trial court ordered a new trial in the interest of justice pursuant to sec. 270.49, Stats.  Our court will sustain such an order unless there is a showing of abuse of discretion on the part of the trial court.[1]  It is elementary that in such cases the supreme court does not look for evidence to sustain the jury's findings, but seeks reasons for sustaining the trial court.[2]  Essentially, the supreme court usually defers to the trial court's decision because of the trial court's opportunity to observe the trial and evaluate the evidence,[3] and the order is highly discretionary.[4]  If one ground relied upon by the trial court in granting a new trial in the interest of justice is correct, this is sufficient to affirm the order of the trial court.[5]

---

[1] *Schlag v. Chicago, M. & St. P. R. Co.* (1913), 152 Wis. 165, 139 N. W. 756; *Van Gheem v. Chicago & N. W. R. Co.* (1967), 33 Wis. (2d) 231, 147 N. W. (2d) 237.

[2] *McFarlin v. Hewitt* (1958), 5 Wis. (2d) 488, 93 N. W. (2d) 445; *McPhillips v. Blomgren* (1966), 30 Wis. (2d) 134, 140 N. W. (2d) 267.

[3] *Felkl v. Classified Risk Ins. Corp.* (1964), 24 Wis. (2d) 595, 129 N. W. (2d) 222.

[4] *Huebner v. Fischer* (1939), 232 Wis. 600, 288 N. W. 254.

[5] *Van Gheem v. Chicago & N. W. R. Co., supra,* footnote 1, at page 240.

*Perversity of Verdict as to Negligence.*

The trial court concluded that the jury's findings on the negligence of the two parties were perverse and unsupported by the evidence. The court found that the defendant violated two safety statutes by passing at an intersection and by failing to sound his horn when passing, and that the jury did not weigh these violations sufficiently. The trial court also found that the defendant's story as to how and where the accident happened was sufficiently impeached by the defendant's own testimony on adverse examination, by the investigating police officer's testimony at trial as to the tire marks, and by the plaintiff's testimony. Finally, the trial court could not accept the defendant's version of the accident because of the uncontroverted testimony that plaintiff's car ended up facing southwest in the southwest corner of the junction between 12 and NN.

All of these reasons indicate that the jury's finding concerning the relative negligence of the parties was against the preponderance of the evidence and actuated by perversity. Sec. 346.10 (3), Stats., states that no driver shall pass another vehicle at an intersection designated by an official traffic sign. Sec. 346.07 (1) requires a driver passing another vehicle to sound his horn. It is uncontroverted that defendant violated both of these statutes and these violations support the trial court's holding that the jury verdict as to the relative negligence of the two parties was perverse.

The defendant's story, reiterated by his witnesses, was sufficiently impeached so that the preponderance of the evidence indicated it should be disregarded. Defendant testified that he saw the plaintiff's car about a half mile away and the car was pulled over to the right side of the road and stopped. On adverse examination defendant stated that he was about 150 feet from the intersection when he first noticed plaintiff's car, and that it was over

to the right of the center line. Defendant also testified that the impact occurred in the center of Highway 12 and that he never went into the ditch on the south of the highway. Officer Burke testified that he arrived at the scene of the accident about forty-five minutes after the impact and observed fresh tire marks in the south ditch of the highway, commencing from a point 102 feet east of county NN to county NN and 112 feet to the west. This testimony corroborates the testimony of the plaintiff that the impact occurred just as her car was entering NN.

The physical location of plaintiff's car also corroborates plaintiff's story and impeaches defendant's. The plaintiff's car wound up in the southwest corner of the intersection of Highway 12 and county NN facing southwest. Since plaintiff's car was struck in the left front, the location of plaintiff's car after impact would be a physical impossibility if the defendant's version was true. All of these factors, relied upon by the trial court, provide an ample basis for a holding that the jury verdict on negligence was perverse and against the preponderance of the evidence, and for the trial court's order granting a new trial in the interest of justice.

*Perversity of the Verdict as to Damages.*

The jury awarded damages of $500 for loss of earnings and $2,000 for personal injuries sustained by the plaintiff. The trial court found that the perversity of the jury pervaded the damage award made by the jury. First, the trial judge found that $500 awarded for loss of wages was inadequate, not founded upon any evidence, and indicative of jury perversity. A review of the evidence sustains this finding. Plaintiff was earning $47.60 a week and was out of work for twenty-six weeks for a total loss of wages of $1,237.60.

The trial court found that the jury's award to the plaintiff of $2,000 for personal injuries was inadequate

and perverse. Plaintiff had back pains for almost a year before she was treated by Dr. Smith. Dr. Smith performed both a myelogram and a discogram on plaintiff, and these are very painful surgical discovery techniques. The tests showed that plaintiff had a ruptured disc at the lumbar—fifth level and Dr. Smith performed surgery in which two discs were removed. Plaintiff spent three weeks in the hospital recovering and was out of work six months. Dr. Smith testified that plaintiff would always have some permanent partial disability in bending and lifting. Although there was evidence that plaintiff was susceptible to back injury because of a congenital defect, there was also testimony that defendant's negligence initiated plaintiff's back problems.

The evidence indicates that the jury award for damages was inadequate. The trial court's finding of perversity as to the award of damages is supported by the preponderance of the evidence. There was no abuse of discretion in basing an order for a new trial in the interest of justice on this perversity.

### Inconsistency of the Verdict.

The jury, in answer to an ultimate-fact question, found the defendant negligent, but found that such negligence was not a cause of the collision. Yet it attributed 25 percent of the total causal negligence to the defendant. The trial court correctly concluded that the verdict was inconsistent. It indicates, although not expressly, that this is one of the grounds relied upon by the court in ordering a new trial in the interest of justice.

The rules for determining when a verdict is inconsistent are articulated in *Statz v. Pohl* [6] as follows:

"(1) If the issue of causal negligence is for the jury and the party inquired about is exonerated but the jury

[6] (1954), 266 Wis. 23, 29, 32a, 62 N. W. (2d) 556, 63 N. W. (2d) 711.

in its comparison of negligence erroneously attributes to such party some degree of causal negligence, the verdict is inconsistent, and a new trial must be granted;

"(2) If it be determined that the party inquired about is free from causal negligence as a matter of law and the jury has exonerated him but has also attributed to him some degree of causal negligence, then the court should strike the answer to the question on comparison as surplusage and grant judgment accordingly . . . ."

" '(3) If but one element of negligence is submitted to the jury and the court can find as a matter of law that the party inquired about in the question is guilty of causal negligence and the jury finds that he is not, and in answer to the question on comparative negligence attributes to him some degree of causal negligence, the court should change the answer to the question which inquires as to his conduct from "No" to "Yes" and permit the jury's comparison to stand with judgment accordingly.' "

Basically, *Statz v. Pohl* permits a court to cure an inconsistent verdict by changing answers, as long as the evidence established the change as a matter of law.[7] In the case at bar, the trial court refused to cure the verdict by holding defendant 25 percent negligent as a matter of law. This ruling is correct.

The verdict involved answers to an ultimate-fact question, although the jury was instructed on several acts on the part of the defendant which it could consider negligent. One of the problems involved in attempting to change the jury's causation answer from "No" to "Yes" so that the defendant is held 25 percent causally negligent is that the court cannot be certain which of the various acts of negligence instructed upon went into the jury's determination of 25 percent negligence.[8] Hence a ruling of causal negligence as a matter of law on some or all of the acts of negligence by defendant does not determine

[7] *Wendel v. Little* (1961), 15 Wis. (2d) 52, 60, 112 N. W. (2d) 172.

[8] *Callahan v. Van Galder* (1958), 3 Wis. (2d) 654, 659, 660, 89 N. W. (2d) 210.

what proportion of negligence the jury would have attributed to the defendant based on such a holding of negligence as a matter of law by the court. For this reason, the verdict is inconsistent and this was a proper ground for ordering a new trial in the interest of justice.

In its detailed opinion, the trial court also cites various other controversies which cropped up during the trial as a further basis for a new trial in the interest of justice. In the eyes of the trial court none of these involved prejudicial error, but were merely cited by the court for their cumulative effect in producing an unfair atmosphere. Since the three grounds already mentioned support the trial court's order, and since these additional matters were nonprejudicial, no discussion of these points is necessary to our decision.

*By the Court.*—Order affirmed.